EDNA TUTTLE, APPELLANT, V. BERT A. WYMAN ET AL.,
APPELLEES.

18 N. W. 2d 744

FILED MAY 18, 1945. No. 31917.

*Frank M. Johnson,* for appellant.

*M. O. Bates,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action in equity to obtain a decree that the defendants are holding title to certain real estate in trust for the benefit of the estate of Isaac Large, deceased. The plaintiff, in her petition, charges the defendants with fraud in obtaining title to all of the real estate formerly owned by her father, Isaac Large; and prays that the defendants be declared trustees, holding title to the land for the benefit of the estate of Isaac Large. The defendants' answer denied generally the allegations of the petition; pleaded the statute of limitations; further alleged that Isaac Large had a num-

ber of creditors and conveyed his real estate with the intention to cheat and defraud his creditors; and prayed for a dismissal of the plaintiff's action. Plaintiff's reply is in effect a general denial of defendants' answer. The court decreed that no act of fraud was practiced by the defendants at the time of the execution of the deeds conveying to the defendants certain real estate formerly owned by Isaac Large; that the defendants are the owners of the fee simple title as joint tenants with right of survivorship of certain real estate formerly owned by Isaac Large, and that such real estate is not held in trust by the defendants for the benefit of his estate; and that defendants are holding title to one quarter section of land in trust for the benefit of the estate of Isaac Large. Plaintiff appeals, contending the court erred in not creating a trust as prayed in her petition. The defendants cross-appeal from that part of the decree awarding one quarter section of land, the title held by the defendants, to the estate of Isaac Large.

The record discloses that on June 13, 1932, Isaac Large, then 71 years of age, made and executed his last will, wherein he devised and bequeathed all of his property to his two daughters, share and share alike, with the exception of a bequest of one dollar to a son. He died June 17, 1939. Also, on June 13, 1932, Isaac Large conveyed to Carl E. Faught three quarter sections of land in Keith county, the consideration named in the deed was $15,000. Nothing was paid by the grantee for the title. On the same day Large deeded one quarter section of land to Lester H. Stedman. The consideration named in the deed was $4,000. The grantee paid nothing for the conveyance. He also, on the same day, deeded a quarter section of land to Jesse L. Hendrix, a brother-in-law of Bert Wyman, defendant. The consideration set forth in the deed was $6,400, subject to a mortgage of $2,500. The grantee paid no consideration for the conveyance. He made and executed, on June 13, 1932, a power of attorney, designating the defendant Bert Wyman, as his attorney in fact to lease, convey, mortgage, collect the rents and attend to all business with reference to

the land deeded to Faught. Shortly thereafter Large moved to California.

On July 26, 1932, Large made and executed a second power of attorney to Bert Wyman, covering, in addition to the lands deeded to Faught, the lands deeded to Stedman and Hendrix. Bert Wyman collected all the rents from the real estate conveyed to Faught, Stedman and Hendrix, and paid the expenditures incident to the lands.

On August 3, 1932, Faught deeded the same land to the defendants, the consideration named in the deed was one dollar. This deed was recorded May 7, 1935. August 13, 1932, Hendrix conveyed the land deeded to him by Large, to the defendants. The consideration named in the deed was $4,000, subject to a $2,500 mortgage. Defendants paid no consideration to Hendrix for this conveyance. This deed was recorded May 22, 1935. January 17, 1935, Stedman deeded the land conveyed to him by Large to the defendants. The named consideration was one dollar. This deed was recorded May 7, 1935.

The plaintiff, Edna Tuttle, is a sister of the defendant Della Wyman, and sister-in-law of the defendant Bert Wyman, and a daughter of Isaac Large, deceased.

On May 31, 1932, Large entered into a contract to sell three quarter sections of land in Keith county to a real estate dealer for $15,000. He acknowledged receipt of a $5,000 payment, but never obtained the money. This contract was to be completed August 1, 1932, when the balance of $10,000 was due. Previous to entering into the contract Large lost an amount of money, believed to be $10,000 on a fake horse race.

The three quarter sections of land evidenced by the contract of May 31, 1932, is the land that Large deeded to Faught on June 13, 1932. In the fore part of June, 1932, Bert Wyman contacted Faught and wanted him to help his father-in-law out of some difficulties, explaining that the father-in-law had made an improvident contract of sale with respect to three quarter sections of Keith county land, and Bert Wyman wanted Faught to take title to the land,

handle it as his own, and sell it. A short time thereafter Faught had a conversation with Large wherein Large told him about the contract of May 31, 1932, and said he was sorry he had entered into such a contract, and wanted Faught to take the title and sell the land. Faught agreed to do this and attempt to sell the land for $18,000, and if successful he would retain one-third of the amount over and above $15,000 as his commission. On August 1, 1932, the date of the expiration of the contract entered into May 31, 1932, the purchaser failed to comply with the terms of the agreement. Thereafter Faught instituted a suit to quiet title in him, and obtain a decree to that effect. He was successful and his explanation was that he believed the contract of May 31, 1932 constituted a cloud on the title, and by having it removed the land would be more salable. Faught testified that he took title to the three quarter sections of land as an accommodation to Large, and for the purpose of sale, believing he could make some money, but he never considered himself at any time the true owner. At the time he took title, he was not aware that Large had several creditors. It developed that on November 28, 1930, Large obtained a decree of divorce in Iowa, from his wife, and on June 10, 1931, she brought an action to set aside the decree. She obtained a settlement wherein Large was to pay off a mortgage, in the amount of $2,300, on certain land owned by her. This he failed to do, so suit was brought against Large in Keith county and judgment was obtained in the amount of $2,530.10. Faught mortgaged the land for $2,600, turning the money over to Bert Wyman who satisfied the judgment. The attorneys who represented Large in the divorce proceedings in Iowa, brought suit against him in Keith county, and procured a judgment in the amount of $276.25. Bert Wyman satisfied this judgment July 10, 1935. Suit was brought on a promissory note in favor of W. E. Burton, dated July 29, 1930, for $1,000 due July 29, 1932. Judgment was entered against Large on the note October 12, 1933, and satisfied May 21, 1935. Another judgment appears in the record, in favor of a bank on a

note of $4,000. Judgment was entered against Large on January 18, 1932 for such amount, and he satisfied the judgment February 2, 1932. The record does not show any other creditors.

Faught testified he did not know the plaintiff, and thought Della Wyman was the only daughter, and had he known about the plaintiff, he would have required a written contract with respect to the conveyances made to him and by him.

The conveyance to Stedman was taken by him as an accommodation to Large, when Large told him he was making a property settlement with his wife, and the lawyers wanted $1,100. Stedman conveyed to the defendants at Bert Wyman's suggestion.

In 1933 and 1934 Stedman visited Large in California. At both times Large was receiving subsistence from the county. On the first visit Large told Stedman he had received a letter from his daughter, Edna Tuttle, inquiring about his finances, and said she did not need to worry, he had everything fixed. Stedman attempted to contact Large in 1935, but he had moved to the county poor farm.

The conveyance to Hendrix developed in the same manner as that which was made to Stedman. Hendrix testified he knew that the conveyance made by Large to him, and the conveyance by him to the defendants, bore false and untrue considerations.

The record shows that Large was an inmate of the county poor farm in California from May 4, 1935 to June 30, 1936, and received subsistence from December, 1934, through March, 1938, in the amount of $382.45.

On June 13, 1932, when the conveyances were made by Large to Faught, Stedman and Hendrix, and when the will was made and executed, and the first power of attorney was made and executed to Bert Wyman, the attorney consulted in these matters testified that Large said Bert Wyman was handling the conveyances, and the attorney suggested it would be well to have a trust agreement drawn, unless the deeds of conveyance contained a recitation of trust. Large

said he was deeding to friends of Bert, in whom he had confidence, and Bert would protect him, and in any event, he did not believe it would be necessary. On cross-examination the attorney testified that Large never made a request that he deed his property in order to avoid his creditors.

The plaintiff testified that her father never told her he had conveyed real estate he owned in Keith and Dawson counties. She learned for the first time of the conveyances to Faught, Stedman and Hendrix in October or November, 1942, from Stedman, who wrote her about them, and that her father had made a will. She later discussed this matter with Stedman when she was in Long Beach, California in July, 1943. She was present at her father's funeral in Lexington, and no mention was made about the defendants owning title to all of the father's real estate. In 1941 she wrote to her sister, Della Wyman, defendant, inquiring about the progress of her father's estate. She received no answer to this letter. In August, 1942, she wrote again to her sister, to the effect that she needed $200 for hospital purposes, due to an operation to be performed upon her daughter. This amount was sent to her. The first she knew that the defendants claimed the property as their own was in July, 1943.

There seems to be a dispute with reference to the date of a letter sent by the plaintiff to Della Wyman, as to whether the plaintiff knew about the different conveyances in 1939 or 1940, and was acquainted with the facts and circumstances. From a reading of the exhibit, it appears the plaintiff knew something about the conveyances, but not all of them. There is nothing to show that she knew the purposes for which they were made, or that she knew Faught, Stedman and Hendrix had conveyed to the defendants. She testified that her father wrote her he was deeding land in trust to Stedman for the benefit of his estate.

The testimony in behalf of defendants was to the effect that Large was being pressed by his creditors, and inquired from a friend, and from an attorney, as to how he should proceed. He was advised if he made the conveyances and

there were no judgments against him, there could be no harm in so doing, and it was nobody's business.

It is apparent Isaac Large realized that he had been wasteful of his money and had made mistakes in transacting business. He lost confidence in his ability to attend to his business and felt he was unable to continue doing so. He desired to go to Caliifornia and live, and to leave his business affairs in the charge and care of a person in whom he had confidence. That person was his son-in-law, the defendant Bert Wyman. Mr. Wyman had considerable to do with the conveyances to Faught, Stedman and Hendrix, in fact, he engineered these conveyances. It was he that had Faught, Stedman and Hendrix convey to him and his wife without consideration passing in·any of the conveyances. The powers of attorney of June 13, 1932 and July 26, 1932, explain Large's confidence in Bert Wyman. He gave Mr. Wyman full and complete charge of his business. There was no intention nor desire on the part of Large to defraud or cheat his creditors. Bert Wyman knew this, and from the rents collected and by a mortgage on a part of the land, all of the creditors of Isaac Large were paid. Large felt that when he deeded the three quarter sections of Keith county land to Faught, that Faught would sell the land and there would be ample money to pay all his creditors and he would have thousands of.dollars in addition, besides the land which he had deeded to Stedman and Hendrix.

We conclude the conveyances were not fraudulent, but were made to conserve and protect the estate of Isaac Large. If Isaac Large intended to cheat and defraud his creditors, or if he intended that the defendants would eventually own all of his real estate, obviously he would not have made a will on the same day the conveyances were made. Recognizing the right of this plaintiff to share and share alike in his property with her sister, the defendant Della Wyman, he nominated Della Wyman executrix.of his estate. He felt that she would make the division of the property in accordance with his desires, as evidenced by his will.

We conclude the evidence shows a fraudulent scheme and

devise on the part of the defendants to cheat and defraud this plaintiff, and to unjustly enrich themselves. It is clear that they did nothing to merit the ownership of all of Isaac Large's land. It was not intended by Large that they should own all of his land. It was his intention that the land be held in trust for the benefit of his estate. We believe, from analysis of the record, a constructive trust comes into existence.

In *Pollard v. McKenney*, 69 Neb. 742, 96 N. W. 679, a case similar to the instant case in that the agreement to reconvey was entirely parol, the court held such an agreement would not fall within the statute of frauds. "Where a person obtains the legal title of real estate belonging to another by means of fraud, actual or constructive, a court of equity will fasten a constructive trust upon the property, and convert the grantee or those claiming under him, by descent, into trustees of the legal title, and enforce the trust for the benefit of the grantor or those claiming under him."

" 'A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.' Restatement, Trusts, sec. 1e." *Fisher v. Keeler*, 142 Neb. 728, 7 N. W. 2d 659. See, also, *Wilcox v. Wilcox*, 138 Neb. 510, 293 N. W. 378.

" * * * a constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title, as against another, provided some confidential relation exists between the two, and provided the raising of a trust is necessary to prevent a failure of justice." 65 C. J., sec. 215, p. 456.

"A constructive trust is the formula through which the conscience of equity finds expression, and when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the bene-

ficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.*, 225 N. Y. 380, 122 N. E. 378.

We hold, under the circumstances, a constructive trust is established, and the defendants are declared to be trustees and to hold title to the lands in question for the benefit of the estate of Isaac Large, deceased.

The next question presented is whether or not the statute of limitations has run against the plaintiff's claim. The defendants, in their answer, allege that more than four years have elapsed since the conveyances were made and before the death of Isaac Large; and more than four years have elapsed since the death of Isaac Large; that if a cause of action existed in favor of Isaac Large, it was barred by the statute of limitations before his death, and if a cause of action accrued to the plaintiff upon the death of Isaac Large, it is now barred by the statute of limitations.

The plaintiff did not discover the true facts with reference to the conveyances made to Faught, Stedman and Hendrix until October or November, 1942, and she first discovered that the defendants claimed to own all of the real estate which formerly was owned by her father and to which they held title, in July, 1943. In none of the correspondence between the defendant, Della Wyman, and the plaintiff, was it ever revealed to the plaintiff, or even indicated, that the defendants claimed to own all of such land, or that they even held title to any part of it; nor was it ever mentioned by the defendants; nor did she have knowledge of her father's will. As far as the defendants were concerned, they concealed knowledge of facts from this plaintiff respecting the conveyances, especially the conveyances from Faught, Stedman and Hendrix to them, and of the will.

The statute of limitations does not run in a case such as the instant case, during the time when the obligor fraudulently conceals the existence of the cause of action. " 'The statute of limitations begins to run in favor of a trustee *ex maleficio* of a constructive trust from the time of the discovery of the wrong or fraud, for the prevention of which

the trust is imposed.' *Hanson v. Hanson,* 78 Neb. 584." *Abbott v. Wagner,* 108 Neb. 359, 188 N. W. 113. See, also, *Wiseman v. Guernsey,* 107 Neb. 647, 187 N. W. 55.

The plaintiff offered exhibits 26 and 27, depositions of the defendants, in evidence. The offer was made for the purpose of showing a variance between the defense pleaded in the defendants' answer that Isaac Large made the conveyances of his real estate to cheat and defraud his creditors, and the testimony given in the depositions. The defendants objected to the depositions, on the ground that the defendants were residents of the county and their testimony was available, and in fact, the defendant Bert Wyman was in attendance during the trial. The objections were sustained, and in the depositions we find relevant and material evidence not objected to, which discloses statements in the nature of admissions against interest which are pertinent to the issues being tried. The defendants testified that they were the owners of all of the land formerly owned by Isaac Large and to which they held title, for the reason that they had supported him and sent him approximately $100 per month during the last 7 years of his life, and this was the agreement.

"It is a well-settled rule that admissions of a party against interest made in court or out of court, with reference to and pertinent to the issues being tried, are admissible in evidence against such party." *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854. See, also, *Young v. Kinney,* 79 Neb. 421, 112 N. W. 558; *McDaniel v. Farlow,* 132 Neb. 273, 271 N. W. 905.

"A statement made by a party to an action as to any fact in issue unfavorable to the conclusion contended for by such party is relevant, and may be introduced in evidence as an admission against interest." *Falkinburg v. Inter-State Business Men's Accident Co.,* 132 Neb. 670, 272 N. W. 924.

The court should have admitted the depositions, for the purpose here stated.

The court divided the costs, requiring each party to pay their own costs. We hold that within the contemplation of

section 25-1708, R. S. 1943, "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions * * * for the recovery of specific real * * * property", the court did declare a trust existed in so far as the quarter section of land held by Stedman and conveyed by him to the defendants was concerned. The defendants did not concede that any part of this land that originally belonged to Isaac Large was held by them in trust. The court's decree constituted a recovery for specific real property in which the plaintiff would be entitled to an undivided half interest. The court erred in dividing the costs under the circumstances.

The accounting requested by the plaintiff is not before the court, and need not be determined. We hold that all the land formerly owned by Isaac Large, to which the defendants now hold title, be declared to be held in trust by the defendants for the benefit of the estate of Isaac Large, deceased, and judgment be entered accordingly. Defendants' cross-appeal is dismissed.

AFFIRMED IN PART AND
REVERSED IN PART.